United States District Court
Northern District of California

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | NORTHERN DISTRICT OF CALIFORNIA |
| 3 | SAN JOSE DIVISION |

BLAYNE E. EATON,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

Case No. 5:17-cv-00682-EJD

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 11, 15

Plaintiff Blayne E. Eaton ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of an unfavorable final decision by the Commissioner of the Social Security Administration denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In a Motion for Summary Judgment, Plaintiff seeks an order reversing the decision and awarding benefits. Dkt. No. 11. The Commissioner opposes, and moves for summary judgment affirming the Commissioner's decision. Dkt. No. 15.

One of Plaintiff's arguments is meritorious, and a reassessment of the record by the ALJ could result in a different outcome. Because the Commissioner's final decision is not supported by substantial evidence in one important aspect, Plaintiff's motion will be granted and the Commissioner's cross-motion will be denied. Rather than order the payment of benefits in this instance, the court will remand the action to the Commissioner for further administrative proceedings consistent with this order.

### I. BACKGROUND

#### A. Procedural History

Plaintiff applied for DIB and SSI in May, 2014. Tr., at 207-214. In his DIB application, Plaintiff alleged a disability onset of August 1, 2012. Id. at 207 ("I became unable to work because of my disabling condition on August 1, 2012."). In his SSI application, Plaintiff alleged a

disability onset date of January 1, 2008. Id. at 209 ("I am disabled. My disability began on January 1, 2008."). The Commissioner's records, however, note a disability onset date of December 31, 2007. Id. at 215, 224. These records also establish Plaintiff's "date last insured," or DLI, as December 31, 2010.[1] Id. at 224.

Plaintiff's claims were initially denied by the Commissioner on September 30, 2014. Id. at 137-146. Plaintiff requested reconsideration, which request the Commissioner denied on January 21, 2015. Id. at 150-62.

Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"), which occurred before ALJ Brenton L. Rogozen on August 10, 2015. Id. at 12-66. Plaintiff appeared and was represented by counsel. The ALJ heard testimony from Plaintiff and two witnesses: Dr. Melvin Harter, an internist, and James Westman, a vocational expert. On October 26, 2015, the ALJ issued a written decision finding that Plaintiff was not disabled. Id. at 12-24.

Plaintiff sought administrative review. Id. at 7. On January 19, 2017, the Appeals Council denied the request, and the ALJ's decision became the final decision of the Commissioner. Id. at 1-5. Plaintiff then commenced this action, and the instant summary judgement motions followed.

### B.  Plaintiff's Personal, Vocational and Medical History

According to his application for benefits, Plaintiff was born on November 14, 1957, and was 57 years old at the time of the hearing. Id. at 33, 207. He completed high school. Id. at 49. Plaintiff testified he previously worked in the landscaping industry. From 2000 to 2003, Plaintiff was partial owner of a landscaping business and supervised employees. Id. at 34-35. In 2005 and 2007, Plaintiff was employed by another company as a landscaping supervisor. Id. at 35-36.

Plaintiff filed for DIB and SSI due to peripheral neuropathy; obstructive sleep apnea; nonalcoholic steatohepatitis; degeneration of the lumbar intervertebral disc; plantar fascial

---

[1] A DLI is the last day of the quarter in which a claimant meets insured status for disability. See 20 C.F.R. § 404.131(a) ("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled.").

fibromatosis; degenerative joint disease; trochanteric bursitis of the lumbar spine; depressive disorder; edema; and obesity. Id. at 227. The record shows that Plaintiff's medical treatment was sporadic from the date of onset in 2007. The earliest evidence is from April 21, 2009, when Plaintiff participated in a diagnostic sleep study at Mountain Medical Pulmonary and Sleep Center in Carson City, Nevada. Id. at 490-504. The diagnosis reflected severe obstructive sleep apnea, and it was recommended Plaintiff use a continuous positive airway pressure ventilator, or CPAP, for sleep. On February 17th and June 6, 2011, Plaintiff was examined by Dr. Ted Matuszewski. Id. at 600-606. Dr. Matuszewski found that Plaintiff suffered from "chronic high blood pressure," "chronic spasms," "chronic stress disorder," "chronic anxiety," "chronic headaches," and "chronic knee pain," and found that "[m]arijuana may mitigate the symptoms or effects" of these conditions. Id. at 604.

On July 17, 2012, Plaintiff participated in another sleep study at the Central Coast Sleep Disorder Center. Id. at 476-488. The results of this study again showed severe obstructive sleep apnea. Use of a CPAP improved Plaintiff's condition.

From June, 2012, through April, 2014, Plaintiff received treatment from the Santa Cruz Clinic. Id. at 360-414. At this first appointment, Dr. Judith Kelley noted Plaintiff had stopped taking medications, and had a history of sleep apnea, ocular migraines perhaps secondary to hypertension, and depression. Id. at 380-381. On July 11, 2012, Plaintiff was "feeling much better on medication," was not experiencing headaches, and had decreased blood pressure. Id. at 378. On October 12th and November 30, 2012, Dr. Kelley noted Plaintiff had bilateral hip pain. Id. at 377. On January 25, 2013, Plaintiff complained of "worsening neuropathy pains and symptoms," including numbness, tingling, and burning in both feet, as well as radiating pain. Id. at 372. Dr. Kelley noted Plaintiff was positive for depression with suicidal thoughts at times and had recurring bilateral trochanteric bursitis. Id. She also wrote that Plaintiff felt he could not work at all and had "difficulty with sitting or standing for very long" because he had to "continually move to keep pain at bay." Id. at 372-373. On May 6, 2013, Plaintiff reported

medication was "helping a lot with neuropathy pain," but stated he did not want to take an antidepressant. Id. at 370.

An electromyogram and nerve study from February 19, 2013, was normal for Plaintiff's right leg and showed no evidence for a large fiber polyneuropathy or a lumbosacral radiculopathy. Id. at 419. The clinician expected Plaintiff was in the early stages of diabetic polyneuropathy causing mild small fiber dysfunction. Id.

Plaintiff was treated at the Dominican Hospital emergency room on June 27, 2013, for dizziness and vertigo. Id. at 585. He reported a "jolt" to the right side of this head with anxiety. Plaintiff was discharged after tests and x-rays showed no abnormalities.

Plaintiff treated with Dr. Jason Novick, a podiatrist, from August through October, 2013, for plantar fasciitis, foot pain, and a closed fracture of the left metatarsal bone. Id. at 342-355. He also received treatment from Dr. Tony Masri for sleep apnea and related complications from June, 2014, to November, 2014. Id. at 536-559. In the last report included in the record, Dr. Masri noted Plaintiff's sleep apnea was "well controlled" and that his treatment compliance had improved. Id. at 538.

An audiometric evaluation from May 12, 2014, revealed that Plaintiff has hearing loss in both ears, with left asymmetry in low frequencies. Id. at 449-462. Plaintiff was prescribed hearing aids.

Plaintiff was examined by Dr. Mary Gable on August 21, 2014. Id. at 527-530. Dr. Gable noted Plaintiff's chief complaints as peripheral neuropathy and chronic back pain. She found that Plaintiff had the following restrictions: pushing, pulling, lifting and carrying of 40 pounds occasionally and 20 pounds frequently; walking and/or standing for four to five hours cumulatively, and sitting for six hours cumulatively, out of an eight hour work day with appropriate breaks; occasional bending, kneeling, stooping, crawling and crouching; no work on ladders or at heights; and difficulty hearing in crowded spaces.

Dr. Ilene Morrison conducted mental status disability evaluation of Plaintiff on September

15, 2014. Id. at 531-535. She diagnosed depressive disorder not otherwise specified, and determined Plaintiff had mild impairments in the ability to do detailed and complex instructions, and in the ability to maintain concentration, attention, persistence and pace; and moderate impairments in the ability to carry out simple one or two step instructions without emotionally decompensating and, and in the ability to maintain regular attendance in workplace and perform work activities on a consistent basis.

Dr. Kelley completed a Physical Residual Functional Capacity Questionnaire on January 14, 2015. Id. at 580-581. Dr. Kelly indicated the following: Plaintiff can sit, stand and walk for less than two hours in an eight hour day; Plaintiff needs to walk every 60 minutes for periods of 15 minutes; Plaintiff requires a job that permits shifting positions from sitting to standing to walking; Plaintiff needs to take unscheduled breaks every one to two hours for 15 to 30 minutes; Plaintiff needs to elevate his legs above his heart for more than 50% of the workday; Plaintiff can never lift more than 20 pounds, and can rarely lift ten pounds or less; and Plaintiff's condition is likely to produce more than four "bad days" per month.

Bridget Goin, Plaintiff's treating therapist from August, 2014, to July, 2015, completed a Mental Disorder Questionnaire Form on July 23, 2015. Id. at 636-640. Therapist Goin diagnosed Plaintiff with recurrent, chronic major depressive disorder and generalized anxiety disorder. She noted that Plaintiff has "difficulty in maintaining his previous level of social and professional functioning," but does not require much assistance with his activities of daily living. She also noted that per Plaintiff's reporting, increased levels of irritability and tearfulness affect his ability to communicate effectively with co-workers. In addition, Therapist Goin indicated per Plaintiff's reporting that that his physical and mental health condition negatively affects his abilities to sustain focused attention and to adapt to common work environment stressors.

## II. LEGAL STANDARD

### A. Standard for Reviewing the ALJ's Decision

Pursuant to 42 U.S.C. § 405(g), the district court has authority to review an ALJ decision.

Case No.: 5:17-cv-00682-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
5

The court's jurisdiction, however, is limited to determining whether the denial of benefits is supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g). A district court may only reverse the decision if it is not supported by substantial evidence or if the decision was based on legal error. Id.; Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

"Substantial evidence" is more than a scintilla, but less than a preponderance. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). This standard requires relevant evidence that a "[r]easonable mind might accept as adequate to support a conclusion." Vertigan, 260 F.3d at 1049 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). A court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). The court must affirm the ALJ's conclusion so long as it is one of several rational interpretations of the evidence. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). However, the court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014).

### B. Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given the claimant's age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

"The claimant carries the initial burden of proving a disability." Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (observing that the claimant must satisfy the burden on the first four steps of the evaluative process). If the

claimant proves a prima facie case of disability, then the Commissioner has the burden of establishing the claimant can perform "a significant number of other jobs in the national economy." Thomas, 278 F.3d at 955; Bowen, 482 U.S. at 146 n.5 ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy."). "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Thomas, 278 F.3d at 955.

The ALJ evaluates Social Security disability cases using a five-step evaluation process. 20 C.F.R. § 416.920. The steps require the following analysis:

(1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

(2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.

(3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments. 20 C.F.R. § 416.920(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.

(4) The ALJ must determine the claimant's residual functional capacity ("RFC") despite limitations from the claimant's impairments. 20 C.F.R. § 416.920(e). If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If the claimant cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 416.920(f).

(5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the national economy. 20 C.F.R. § 416.920(g).

## III. DISCUSSION

The ALJ made the following findings and conclusions on the five steps:

(1) For step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 31, 2007;

(2) For Plaintiff's DIB claim, the ALJ determined at step two that Plaintiff had medically-determinable impairments of hypertension and obstructive sleep apnea through the DLI, but that these did not result in a severe impairment of combination of impairments. The analysis of the DIB claim, therefore, stopped at this step.

As to the SSI claim, the ALJ determined at step two that that Plaintiff had the severe impairment of back pain secondary to degenerative changes of the lumbar spine.

(3) For step three, the ALJ determined that Plaintiff's impairment does not meet or medically equal the requirements of the Listing of Impairments.

(4) For step four, the ALJ determined that Plaintiff had the RFC to perform the full range of light work.

(5) For step five, the ALJ determined that Plaintiff can perform his past relevant work as a landscape contractor and landscape supervisor.

Against these findings, Plaintiff argues: (1) the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence; (2) the ALJ's step two finding is erroneous, and (3) the ALJ's credibility finding is not supported by specific, clear and convincing reasons. The court addresses each of these arguments in turn.

### A. The ALJ's Assessment of Plaintiff's RFC is Not Completely Supported by Substantial Evidence

The ALJ found that Plaintiff could perform the full range of light work, an RFC that "requires a good deal of walking or standing."[2] In doing so, the ALJ gave little weight to the

---

[2] "Light work" involves:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing,

Case No.: 5:17-cv-00682-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

8

opinion of Plaintiff's treating physician and "less weight" to the opinions of the consulting physician and the impartial medical expert. The ALJ gave great weight, however, to the opinions of state agency physicians who reviewed Plaintiff's medical records. Plaintiff disputes the weight ALJ afforded to these several medical opinions. Plaintiff is correct to do so because the ALJ's decision is not completely supported by specific and legitimate reasons.

RFC refers to what the claimant "can still do despite existing exertional and nonexertional limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). An ALJ properly determines a claimant's RFC by "considering all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" Robbins, 466 F.3d at 883. "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).

In the context of Social Security adjudications, medical opinions are treated differently depending on the authoring doctor's relationship with the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. In fact, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the

---

or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Case No.: 5:17-cv-00682-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
9

treatment relationship, supportability, consistency with the record, and specialization of the physician." Id.

Where a treating or examining doctor's opinions and conclusions are not contradicted by another doctor, those opinions and conclusions can only be rejected for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where a treating doctor's opinion is contradicted by other medical evidence, the Commissioner must articulate "'specific and legitimate reasons' supported by substantial evidence in the record." Id.; see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831.

Here, the ALJ assigned little weight to Dr. Kelley's assessment of Plaintiff's physical limitations because "it is conclusory and unsupported by the record." The ALJ first observed that Plaintiff produced "little evidence of treatment prior to June 2012," and the treatment he did receive was "routine, conservative, and non-emergency." Though radiographic imaging of Plaintiff's lumbar spine showed osteophyte formation, diffuse intervertebral disc space narrowing, and bridging osteophytes in the lower thoracic spine," and other notes documented loss of lumbar lordosis and limited range of motion in the lumbar spine, the ALJ explained that Dr. Kelley's treatment notes "do not support the extreme limitations she assessed with respect to sitting, standing and walking." The ALJ also described Dr. Kelley's findings from physical examinations as "generally mild," without documented difficulties with station or gait.

As to the opinions of Dr. Gable and Dr. Harter, the ALJ assigned them "less weight" and rejected their assessments of Plaintiff's standing and walking limitations "because such

restrictions are inconsistent with the evidence of record." The ALJ provided one example of an in consistency: "Dr. Gable's own examination documented that the claimant was able to walk without difficulties, walk on his toes and walk briefly on his heels."

In contrast, the ALJ assigned great weight to the opinions of two non-treating, reviewing doctors, Dr. Roger Fast and Dr. Abdolkarim Nasrabadi. They each found Plaintiff could walk for about six hours out of an eight-hour workday. The ALJ found the reviewing doctors' opinions "consistent with the evidence of record, which documented minimal objective findings."

On this record, the ALJ did not err in assigning little weight to Dr. Kelley's opinion of Plaintiff's physical limitations because he provided "specific and legitimate reasons" for doing so. Dr. Kelley's opinion was the most restrictive assessment, and was contradicted by those of the consulting, reviewing and expert doctors. The ALJ's observations about Dr. Kelley's opinion are supported by the record: Plaintiff's medical records showed that Dr. Kelley treated Plaintiff only occasionally rather than regularly over a near two-year period, and provided Plaintiff minimal treatment for a back condition. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (affirming ALJ's rejection of treating doctor's limitations opinion where doctor prescribed only a conservative course of treatment). Moreover, the limitations Dr. Kelley described in the Physical Residual Functional Capacity Questionnaire are not tied to or accompanied by either a recent examination or objective findings or impressions from her prior encounters with Plaintiff. See id.; see also Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). It was therefore permissible for the ALJ to reject Dr. Kelley's limitations opinion as an inaccurate reflection of Plaintiff's physical capabilities.

The ALJ did not, however, identify "specific and legitimate reasons" in assigning "less weight" to the opinions of Dr. Gable and Dr. Harter. In contrast to Dr. Kelley, these doctors each opined that Plaintiff could stand or walk for four to five hours in an eight-hour workday. Tr., at 44 ("If [Plaintiff] had absolutely no weight bearing problems at all, I would with closer to [Dr.

Gable]."). Though the ALJ determined their opinions were inconsistent with other evidence in the record, he identified only one purported inconsistency for this court to review: that Plaintiff could walk normally during Dr. Gable's examination. See Garrison, 759 F.3d 995, 1010 (9th Cir. 2014). But the mere fact Plaintiff could walk unimpaired during one examination does not, on its own, contradict a walking and standing limitation described in terms of several hours. Since the ALJ did not explain exactly how this limited assessment of Plaintiff's coordination and gait undercuts Dr. Gable's ultimate finding about walking and standing for a significant portion of the workday, and because the ALJ did not identify any other contradictory evidence, the court cannot accept the decision to assign "less weight."

In addition, the ALJ's decision does not demonstrate he considered the opinions of Dr. Gable and Dr. Harter in conjunction with all of the pertinent medical evidence. See Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (finding error where ALJ ignores evidence without explanation); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (stating that the court reviewing an ALJ's conclusions "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence'"). The ALJ referenced the objective evidence in the record suggesting degeneration of Plaintiff's lumbar spine, including radiographic imaging and the results of Dr. Gable's examination showing decreased range of motion and "positive straight leg raise bilaterally." But it is not enough for the ALJ to just recite the evidence, superficially state he or she considered the entire record, and then reach a conclusion; the ALJ must also meaningfully address and interpret the evidence where necessary. See Magallanes, 881 F.2d at 751; see also Garrison, 759 F.3d at 1012-13 (holding an ALJ errs by "asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"). Here, before concluding Dr. Gable's opinion was "inconsistent with the evidence of record," the ALJ did not reconcile the opinion with the *consistent, objective* evidence. Such reconciliation is particularly important here, because the clinical findings and radiographic imaging tend to support the four-to-

five hour restriction Dr. Gable applied to Plaintiff's ability to stand and walk.

Furthermore, the opinions of Dr. Fast and Dr. Nasrabadi do not provide sufficient reason to assign little weight to Dr. Gable's assessment of Plaintiff's condition and limitations because those doctors did not examine Plaintiff. See Lester, 81 F.3d at 831. Nor is the ALJ's description of Plaintiff's daily activities enough to support his assessment, because the ALJ did not explain why those activities - none of which were described in the record to require extensive periods of standing or walking - are inconsistent with Dr. Gable's restriction.

In sum, the ALJ's assessment of the medical evidence is not completely supported by "specific and legitimate reasons supported by substantial evidence in the record." Because a revised limitation on standing and walking could affect Plaintiff's RFC, the ALJ must reconsider the opinions of Dr. Gable and Dr. Harter at step four.

**B. The ALJ's Step Two Findings are Not Erroneous**

As the court understands the argument, Plaintiff's challenge to the step two findings is twofold: (1) as to the DIB claim, the ALJ erred by determining Plaintiff had no severe impairments through the DLI, and (2) as to the SSI claim, the ALJ erred by excluding obesity and neuropathy as severe impairments.

To qualify for DIB, a claimant must, inter alia, be insured for such benefits and be under a disability which satisfies the definition of the Social Security Act. 42 U.S.C. § 423(a). If a disability arises in or continues into a quarter in which a claimant is insured, the claimant has "insured status" and can receive benefits. 20 C.F.R § 404.131.

Here, Plaintiff does not dispute a DLI of December 31, 2010. Thus, to qualify for DIB, Plaintiff must establish a disability which existed prior to that date. The ALJ found Plaintiff did not do so, because there was no evidence of medical treatment for any disabling condition prior to the DLI. The record supports this conclusion. The only medical evidence from before the DLI consists of a diagnostic sleep study and a limited medical evaluation. This evidence does not establish any work limitations due to sleep apnea or hypertension, let alone that Plaintiff was

Case No.: 5:17-cv-00682-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
13

unable to engage in substantial gainful activity before the end of 2010. And though Plaintiff references "demonstrated diagnoses of lumbar spine degeneration, depression, obesity, and neuropathy," he fails to cite any record of such diagnoses prior to the DLI or any other evidence on which earlier onset could be reliability inferred. As such, the ALJ did not err by finding at step two that Plaintiff failed to prove a severe impairment which predated the DLI.

Turning to the SSI claim, the court observes that to be considered severe, an impairment must significantly limit a claimant's physical or mental ability to do basic work activities without regard to the claimant's age, education and work experience. 20 C.F.R. § 416.920(c). Here, the ALJ considered whether obesity and neuropathy constituted severe impairments by examining the medical evidence. As to obesity, the ALJ determined it was not a severe impairment under Social Security Ruling 02-1p[3] because there was no evidence of "any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning," and that the effect obesity had on Plaintiff's ability to ambulate was covered by limitations imposed by other conditions. This is a rational interpretation of the record since none of Plaintiff's treating or examining doctors, including Dr. Kelley, identified a specific impact or limitation attributable to obesity. Plaintiff cites to Dr. Harter's testimony, but Dr. Harter's restrictions attributable to obesity do not amount to significant limitations on Plaintiff's physical ability to do basic work activities. And Plaintiff's reliance on Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003), is misplaced. There, the ALJ failed to consider the plaintiff's obesity at all; here the ALJ considered obesity as a potential impairment

---

[3] The relevant portion of Social Security Ruling 02-1p states:

> As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities . . . . We will also consider the effects of any symptoms (such as pain or fatigue) that could limit functioning . . . . Therefore, we will find that an impairment(s) is "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities . . . . [W]e will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

Case No.: 5:17-cv-00682-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
14

1 but found based on the record it was not severe.

2 As to neuropathy, the ALJ determined it was not a severe impairment because a neurological examination and electrodiagnostic testing showed only minimal abnormalities which could be medically managed. This was also a rational interpretation of the record, and Plaintiff does not demonstrate otherwise.

Because the findings are supported by substantial evidence, the ALJ did not err at step two of the sequential analysis.

### C. The ALJ's Credibility Finding is Supported by Specific, Clear and Convincing Reasons

Plaintiff argues the ALJ erred by finding his subjective pain and symptom testimony "less than fully credible." An ALJ engages a two-step process to assess the credibility of a claimant's pain and symptom testimony. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted). If the claimant presents sufficient objective evidence, then the ALJ must give "specific, clear and convincing reasons" to reject a claimant's pain and symptom testimony unless there is evidence of malingering. Id. The ALJ, however, is not "is not required to believe every allegation of disabling pain." Id.

Here, the ALJ identified specific, clear, and convincing reasons, each supported by substantial evidence, for discounting Plaintiff's pain and symptom testimony. The ALJ found that the severity Plaintiff described was not credible because (1) the objective medical evidence and findings on examination did not support Plaintiff's testimony, (2) Plaintiff received sporadic, minimal and conservative care, and (3) Plaintiff described a "somewhat normal level of daily activity," including 20-minute walks of up to one mile. These are each legitimate reasons based on the record. See id. at 1113 ("[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

Case No.: 5:17-cv-00682-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
15

of treatment."); see also Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (holding that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); see also Burch, 400 F.3d at 680-81 (affirming ALJ's adverse credibility finding based partly on extent of claimant's activities of daily living). Accordingly, the ALJ's adverse credibility finding was not erroneous.

## IV. ORDER

Based on the foregoing, Plaintiff's Motion for Summary Judgment (Dkt. No. 11) is GRANTED and the Commissioner's Motion for Summary Judgment (Dkt. No. 15) is DENIED.

The Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings consistent with this order. See Garrison, 759 F.3d at 1019 ("[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."). The court has considered Plaintiff's request for a direct award of benefits without remand, but finds that further administrative proceedings would be useful. See Leon v. Berryhill, 874 F.3d 1130, 1131-32 (9th Cir. 2017).

Judgment will be entered in favor of Plaintiff and the Clerk shall close this file

**IT IS SO ORDERED.**

Dated: September 25, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:17-cv-00682-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
16